Shane A. MacIntyre
BROWN LAW FIRM, P.C.
269 W. Front Street, Suite A
Missoula, MT 59802
Tel (406) 830-3248
Fax (406) 830-3745
smacintyre@brownfirm.com

*Attorneys for Plaintiff Ballard Petroleum Holdings, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| BALLARD PETROLEUM HOLDINGS, LLC,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CHUBB GROUP OF INSURANCE COMPANIES; VIGILANT INSURANCE CO.; and FEDERAL INSURANCE CO.,<br><br>　　　　Defendants. | Cause No. CV-23-12-GF-BMM<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

For its Complaint for Declaratory Judgment, Ballard Petroleum Holdings, LLC ("Ballard") states, avers, and alleges as follows:

### I.   Parties and Jurisdiction

1. Ballard is a Montana Limited Liability Company whose members are citizens and residents of Montana and Wyoming.

1

2. Defendant Chubb Group of Insurance Companies is a Delaware corporation with its principal place of business in New Jersey.

3. Defendant Vigilant Insurance Co. is a New York corporation with its principal place of business in New York and is a subsidiary or Chubb Group of Insurance Companies.

4. Defendant Federal Insurance Company is an Indiana Corporation with its principal place of business in New York and is a subsidiary of Chubb Group of Insurance Companies.

5. The Court has diversity jurisdiction under 28 U.S.C. §1332 of this action between citizens of different states for an amount in controversy in excess of $75,000.00.

**II.   Allegations Common to All Counts**

6. Chubb Group of Insurance Companies, through its subsidiary Vigilant Insurance Co. (hereinafter collectively "Chubb") issued to Ballard a Petroleum Industries Insurance Coverage policy of insurance (the "Policy") dated June 2020 in continuation of insurance coverage provided annually by Chubb to Ballard dating to 2001.  *See* attached Exhibit 1: Chubb Policy.

7. The Policy provides several separate coverages, including On Site Pollution Liability, Off Site Pollution Liability, and Liability Assumed in an Indemnity Contract.

8. In November 2020 Ballard was named by Murphy Oil Entities ("Murphy") as a Third-Party Defendant in two Montana Federal Court cases, *Lockman et al v. Murphy Oil et al* and *Zimmerman et al v. Murphy Oil et al* (the "Underlying Litigation"). Claims by Murphy against Ballard in the Underlying Litigation were referred to pending arbitration (the "Arbitration") pursuant to an arbitration clause of a 2002 Purchase and Sale Agreement between Murphy and Ballard (the "Ballard-Murphy PSA").

9. Ballard submitted claims to Chubb for defense and indemnity under the Policy for both the Underlying Litigation and the Arbitration.

10. By letter dated February 23, 2023, Chubb denied coverage and denied defense of Ballard in both the Underlying Litigation and the Arbitration. *See* attached Exhibit 2: Letter Chubb to Ballard, February 23, 2023 ("denial letter").

11. During the 27 month time period in which Chubb failed to either accept or deny coverage under the Policy, Ballard submitted various reports and materials concerning both the Underlying Litigation and the Arbitration as requested by Chubb.

12. The Policy generally excludes from coverage any liability assumed under contract. Under a Policy endorsement, however, the Policy provides coverage for "liability for damages for bodily injury or property damage or clean

up costs for environmental damage that (Ballard) assumes in an indemnity contract." ("Assumed Liability Coverage").

13. As defined in the Policy, "Indemnity contract" means: ". . . any other contract or agreement pertaining to your business … in which you assume the tort liability of another person or organization to pay damages for bodily injury or property damage or clean up costs for environmental damage, to which this insurance applies, sustained by a third person or organization." Exhibit 1 at 55.

14. The Policy defines:

**Clean Up Cost**

A.  means reasonable and necessary costs to neutralize, remove, remediate (including related monitoring and testing) or dispose of **pollutants** to the extent:

1.  required by **environmental laws**;

2.  recommended by an **environmental professional** in the absence of applicable **environmental laws**; or

3.  incurred by a claimant including a governmental authority

B.  includes related:

1.  attorney and paralegal fees and expenses incurred with our consent; and

    2. investigation costs, response costs and **restoration costs**.

Exhibit 1 at 42.

  **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and **waste**.

Exhibit 1 at 45.

15. The Policy defines "environmental damage" as:

  **Environmental Damage** means the injurious presence of **pollutants** in or upon **natural resources** and other tangible property.

Exhibit 1 at 43.

16. In the Arbitration, Murphy contends that Ballard is subject to liability to Murphy under the Ballard-Murphy PSA for Ballard's assumption of Murphy's tort liability to third parties for cleanup costs and environmental damages and other property damage as alleged in the Underlying Litigation.

17. The Ballard-Murphy PSA is an Indemnity Contract as defined in the Policy, i.e., a contract or agreement pertaining to Ballard's business in which Ballard assumed the tort liability of Murphy to pay damages for bodily injury or property damage or clean up costs for environmental damage.

18. The Policy's Assumed Liability coverage extends to Ballard's "liability for damages." In the Arbitration an Arbitration Panel has preliminarily determined in a non-final decision that Ballard has liability to Murphy for

damages, including Murphy's tort liability to third parties and defense costs of Murphy in the Underlying Litigation.

19. By its February 23, 2023, denial Chubb contended coverage is not available because the "pollution incident" at issue "commenced" prior to the Policy's May 2001 "retroactive date." In so doing Chubb did not consider or address the Policy's Assumed Liability coverage, instead stating the "policy has an exclusion for contractual liability which may further preclude coverage for this matter."

20. The Policy's Assumed Liability coverage applies if "such pollution incident is first discovered (in whole or in part) by a responsible party not later than the number of Calendar Days shown in the Declarations following the commencement of the pollution incident; …." The Declarations set forth a 30-Calendar Day requirement for "Discovery." "Responsible party" means Ballard's "directors or managers (if you are a limited liability company), members (if you are a partnership, joint venture or limited liability company),…."

21. For the Assumed Liability Coverage, "Pollution Incident" means: "a discharge, dispersal, seepage, migration, release or escape of pollutants into or upon land, a structure on land, the atmosphere or groundwater, a watercourse or other body of water."

22. Ballard's "directors, managers, and members" first discovered the underlying claims in 2020 when Murphy filed suit against Ballard. At that time Ballard became aware, for the first time, that the *Lockman/Zimmerman* Plaintiffs were claiming damages and that Murphy was seeking defense and indemnity under the Ballard-Murphy PSA. Matters alleged in *Lockman* and in *Zimmerman* were unknown to Ballard and, upon information and belief, were unknown to Murphy or any other parties prior to initiation of the Underlying Litigation in July 2020.

23. The Policy is a "Claims Made" Policy.

> THIS INSURANCE PROVIDES CLAIMS-MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED, SUCH COVERAGE APPLIES ONLY TO **CLAIMS** FIRST MADE AGAINST THE **INSURED** DURING THE POLICY PERIOD.

Exhibit 1 at 20.

The subject claim was first made against Ballard during the policy period. Coverage obtains under the Claims Made policy for the claims made against Ballard in November 2020, which was during the Policy's policy period.

24. The Policy's Assumed Liability coverage is not linked to the Policy's "retroactive date."  Nothing in the Assumed Liability coverage makes any reference to "retroactive date."  The retroactive date is referenced in separate policy coverages for On Site Pollution Liability and Offsite Pollution Liability, but not in the Assumed Liability coverage.

7

25. The Policy's Assumed Liability coverage is not linked to commencement of a pollution incident during the policy period. Nothing in the Assumed Liability coverage makes any reference to commencement of pollution incident during the policy period. Commencement of pollution incident during the policy period is referenced in separate policy coverages for On Site Pollution Liability and Offsite Pollution Liability, but not in the Assumed Liability coverage.

26. The Policy makes clear that these other coverages differ from the Insured Contract coverage: "With respect to any Time Element Basis Coverage, the trigger of coverage (for On Site and Off Site Pollution Liability) *differs from that which applies to other coverages* under the Policy. This Time Element Basis coverage applies (for On Site and Off Site Pollution Liability Coverages) only if a pollution incident, to which this insurance applies, commences during the policy period …."

27. That the retroactive date is inapplicable to the Assumed Liability coverage for an Indemnity Contracts (B.3) is made clear by other terms of the Assumed Liability coverage terms, under which coverage for contracts other than Indemnity Contracts (B. 2) is limited to clean up costs from a pollution incident that "did not commence before the Retroactive Date …." This retroactive date limitation of B.2 is not applicable to coverage for Indemnity Contracts under B.3.

28. Because the Assumed Liability coverage is not linked in any fashion to the Policy's retroactive date , Chubb's reliance on the retroactive date to deny Insured Contract coverage is in breach of the Policy.

29. For purposes of separate coverages for On Site Pollution Liability and Offsite Pollution Liability, Chubb's reliance on the Policy retroactive date also is misplaced. In the Underlying Litigation the Plaintiffs alleged continuing tort contamination for periods post-dating May 2001 based on alleged separate pollution incidents which are ongoing through the present. The claims against Ballard by Murphy are all for damages that post-date the 2002 Ballard-Murphy PSA, and which post-date the May 2001 retroactive date.

30. In addition to the Policy, Chubb through its subsidiary Federal Insurance Co. (collectively "Chubb") issued Commercial Excess and Umbrella Insurance Coverage to Ballard (the "Excess Umbrella Coverage"). The Excess/Umbrella coverage follows the terms and conditions of the Underlying Insurance to provide coverage which exceeds the limits of the Underlying Insurance.

31. The Chubb Pollution Liability coverage for Ballard is identified as Underlying Insurance for purposes of the Excess/Umbrella Policy. . The Excess/Umbrella Policy provides drop down coverage where the applicable underlying limits are: • reduced by payment of judgments, settlements or related

costs or expenses (if such costs or expenses reduce such limits), or are • exhausted by payment of judgments, settlements or related costs or expenses (if such costs or expenses reduce such limits).

32.  The underlying Chubb Pollution Liability Insurance provides Assumed Liability coverage for Ballard's assumption of tort liabilities of a third party.  The Excess/Umbrella Policy follows that underlying insurance.

33.  In addition, by endorsement, the Excess/Umbrella Policy provides coverage where the underlying policy is a claims made policy and provided the "injury or damage did not occur … before the Retroactive Date as shown in this Endorsement or after the end of the policy period of this insurance and … a claim with respect to such injury or damage was first made during the policy period of this insurance …." The Excess/Umbrella Retroactive Date in the endorsement is May 21, 2001. The subject injury or damage occurred after that 2001 retroactive date.  Plaintiffs in the Underlying Litigation seek recovery for injury or damage from continuing tort during periods post-dating 2001.  Claims against Ballard by Murphy are all for injury or damage post-dating 2001. The claims were first made against Ballard during the policy period of the Excess/Umbrella Policy.

34.  Each of the *Lockman* and *Zimmerman* underlying cases is a separate Incident for purposes of the Policy's Each Incident Limit of $1 million. Ballard

has satisfied the $100,000.00 self-insured retention requirements of the Policy for each such Incident.

## COUNT I
## DECLARATORY JUDGMENT
## ASSUMED LIABILITY COVERAGE

35.    Ballard realleges paragraphs 1-34 above.

36.    The Ballard-Murphy PSA is an Indemnity Contract as defined in the Policy.  Claims have been made against Ballard by Murphy for assumption of Murphy's tort liability to third persons.

37.    Ballard has made claim under the Policy for defense and indemnity of its assumption of Murphy's tort liability for cleanup costs for environmental damage in the Underlying Litigation.  The Assumed Liability coverage extends to amounts it is determined that Murphy is liable to third parties and that Ballard assumed, and also extends to defense fees and costs incurred by Murphy and for which Ballard has assumed liability under the Indemnity Contract.

38.    Assumed Liability coverage applies where the subject claim was first discovered by a responsible party and timely reported to Chubb.  The matters alleged in the Underlying Litigation were first discovered by Ballard's directors, managers or members in November 2020.  The claim was timely reported to Chubb following Ballard's discovery of the claim.

39. The claim at issue was first made against Ballard during the policy period. The Policy provides coverage for "CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD."

40. Chubb's reliance on the Policy's retroactive date to deny Assumed Liability coverage ignores the fact Assumed Liability coverage is not linked to the retroactive date, unlike other policy coverages.

41. Chubb's reliance on the Policy retroactive date to deny coverage under the Assumed Liability coverage terms of the Policy is in breach of the Policy. The Court should so declare.

42. The Policy provides coverage for tort liability of Murphy assumed by Ballard under the Ballard-Murphy PSA Indemnity Contract, including all amounts it is determined that Ballard owes to Murphy under that Indemnity Contract. The Court should so declare.

43. Ballard also is entitled to recovery under the Policy's Assumed Liability coverage of fees and costs incurred by Ballard in defending claims against Ballard under the Indemnity Contract. The Court should so declare.

## COUNT II
### DECLARATORY JUDGMENT
### ONSITE AND OFFSITE POLLUTION LIABILITY COVERAGE

44. Ballard re-alleges paragraphs 1-43 above.

45. The policy provides Off Site Pollution Liability coverage for clean up costs for environmental damage from a pollution incident that has migrated from an insured site. In the *Lockman* litigation the plaintiffs claim clean up costs for alleged environmental damage from migration from an insured site.

46. By its February 23, 2023, correspondence Chubb denied Off Site Pollution Liability coverage on the basis the alleged pollution incident commenced before the policy's May 2001 retroactive date. However, the claims by Murphy for the *Lockman* litigation seek to recover damages that occurred from and after the 2002 Ballard-Murphy PSA. The claims by plaintiffs in the *Lockman* litigation seek to recover damages for continuing tort for periods after 2018 based on alleged separate ongoing contamination that post-dated May 2001.

47. The policy provides On Site Pollution Liability coverage for clean up costs for environmental damage from a pollution incident on or under the insured site. In the *Zimmerman* litigation the plaintiffs claim clean up costs for alleged environmental damage on or under the insured site.

48. By its February 23, 2023 correspondence Chubb failed to address On Site Pollution Liability coverage at all. The claims by Murphy respecting the *Zimmerman* litigation seek to recover damages that occurred from and after the 2002 Ballard-Murphy PSA. The claims by plaintiffs in the *Zimmerman* litigation

seek to recover damages for continuing tort for periods after 2018 based on alleged separate ongoing contamination that post-dated May 2001.

49. The Policy provides coverage to Ballard under the Offsite Pollution Liability Coverage and the On Site Pollution Liability Coverage. The Court should so declare.

## COUNT III
## DECLARATORY JUDGMENT
## EXCESS/UMBRELLA COVERAGE

50. Ballard realleges paragraphs 1-49 above.

51. The Chubb Excess/Umbrella Policy "will follow the terms and conditions of underlying insurance described in the Schedule Of Underlying Insurance."

52. The underlying Chubb Pollution Liability Insurance provides Assumed Liability coverage for Ballard's assumption of tort liabilities of a third party. The Chubb Excess Umbrella Policy follows that underlying insurance.

53. Upon exhaustion of the limits of the Policy, Ballard is entitled to coverage under the Chubb Excess/Umbrella Policy. The Court should so declare.

## COUNT IV
## BREACH OF CONTRACT

54. Ballard realleges and incorporates paragraphs 1-53 above.

55. The Policy is a binding contract entered into between both Ballard and Chubb.

56. Per the express terms of the Policy, Chubb has the duty to defend and indemnify Ballard for the claims asserted in the Underlying Litigation and the Arbitration.

57. Chubb breached its duty by failing to provide a defense to Ballard, whether it be under a reservation of rights or otherwise.

58. Chubb's breach has caused Ballard significant damages, including but not limited to ongoing defense costs and fees in defending itself in the Underlying Litigation and the Arbitration.

59. Given Chubb breached its duty to defend, Chubb should be estopped from denying coverage over two years after the claim was originally submitted on Ballard's behalf. As such, Chubb should be estopped from asserting any defenses to coverage.

## COUNT V
## UNFAIR CLAIMS SETTLEMENT PRACTICES

60. Ballard realleges paragraphs 1-59 above.

61. Chubb is an insurer within the meaning of Mont. Code Ann. §§33-18-242 and 33-1-201(6).

62. Chubb refused to affirm or deny coverage within a reasonable time after claims were submitted to it. Chubb delayed more than two years before responding to the claim.

63. Chubb failed to conduct a reasonable investigation based upon all available information. Without limitation, Chubb denied the claim without addressing all coverages applicable to the claim. In denying Ballard's claim Chubb failed to recognize that it had agreed to defend another insured for claims arising out of the same *Zimmerman* litigation where the policy retroactive date was 2010.

64. Chubb has neglected to attempt in good faith to effectuate prompt, fair, and equitable settlement of claims in which liability has become reasonably clear.

65. Chubb's acts and conduct are in violation of sections (1), (4), (5), and (6) of the Montana Unfair Claims Settlement Practices Act, Mont. Code. Ann. §33-18-201.

66. As a result of Chubb's violations of Montana statutes Ballard has suffered and will continue to suffer economic damages, entitling Ballard to recover damages in an amount to be proved under Mont. Code Ann. §33-18-242.

WHEREFORE, Ballard prays for:

1. A declaratory judgment of coverage under the Policy;

2. A declaratory judgement of coverage under the Excess Umbrella Policy;

3. A declaratory judgment that Chubb breached its duty to defend and is therefore estopped from asserting any defenses to coverage;

4. For extra-contractual damages for Chubb's violation of Montana claims handling statutes;

5. Recovery of its attorney's fees and costs incurred in this action;

6. For such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Ballard hereby requests a trial by jury of all issues so triable.

DATED this 27th day of February, 2023.

BROWN LAW FIRM, P.C.


By:  /s/ Shane A. MacIntyre
     *Attorneys for Plaintiff Ballard Petroleum Holdings, LLC*